UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

DURRELL WILLIAMS,        )
                             )
          Movant       )
v.                          )    2:08-cr-00112-GZS-2
                             )    2:12-cv-00133-GZS
                             )
UNITED STATES,          )
                             )
         Respondent   )

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Durrell Williams was convicted following a jury trial on numerous drug and gun charges and was sentenced to twenty-five years in prison. On appeal, he unsuccessfully argued that (1) his court-appointed trial counsel had inadequate time to prepare, (2) the evidence was insufficient to convict him, and (3) his sentence was unreasonable and reflected computational errors. United States v. Williams, 630 F.3d 44, 46 (1st Cir. 2010). He now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on grounds of ineffective assistance of counsel and miscalculation of criminal history points. I recommend that the Court deny Williams's motion and enter a summary dismissal of the proceedings without further evidentiary hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events that led to the prosecution at issue here, Williams was a felon due to a drug conviction in New York State. (Superseding Indictment Counts Nine through Thirteen at 9, ECF No. 44; Information Charging Prior Conviction at 1, ECF No. 64; Judgment at 2, ECF No. 180.) Williams headed a drug and gun conspiracy in Portland. Williams, 630

F.3d at 46.  He sold crack cocaine to middlemen and users and used some of his proceeds to buy handguns.  Id.  His main supplier of guns was a firearms-dealer licensee in Falmouth.  Id.  Williams then took the guns to the borough of Queens in New York City to sell.  Id. at 46-47.  While in Queens, he obtained more crack to sell in Maine.  Id. at 47.  Several firearms that Williams bought in Maine were eventually recovered in New York City.  (Government's Motion in Limine at 2, ECF No. 107; Defendant's Response at 1, ECF No. 125.)

Attorney Howard O'Brien was appointed to represent Williams.  (ECF No. 21.)  Two rounds of plea negotiations occurred.  Williams, 630 F.3d at 47.  Trial was scheduled for January 28, 2009, but was rescheduled to February 17 due to O'Brien's illness.  Id.  Williams consented to the appointment of another lawyer from the same firm, and attorney Sarah Churchill represented Williams through his trial and direct appeal.  Id. at 46-47.  Because she was away on a pre-scheduled vacation at the time she was appointed, the court agreed to continue the trial to February 23, 2009, to give her an additional week to prepare.  Id. at 47.  The court denied her request for yet more time to review the voluminous material produced by the government.  The court invited her, however, to request time during the trial if she felt that the denial caused prejudice.  Id.  She had active co-counsel and did not seek any continuances during the trial.  Id. at 49.  The trial lasted for three days.  Id. at 48.

Williams was convicted on all thirteen counts charged against him, one of which was a drug charge and the remainder gun charges.  (Judgment, ECF No. 180.)  Count one was for conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 851.  Count two was for conspiracy to defraud the United States by using straw purchasers and thereby knowingly causing false representations to be made concerning a federal firearms licensee's required recordkeeping in

violation of 18 U.S.C. § 371.  Count three was for conspiracy to engage in unlicensed firearms dealing in violation of 18 U.S.C. § 371.  Counts four through eight were for aiding and abetting false statements in gun transactions in violation of 18 U.S.C. §924(a)(1)(A) and (2).  Counts nine through thirteen were for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Judgment at 1-2.)

The court sentenced Williams to 300 months (25 years) on count one, which was the drug conviction; 60 months (5 years) each on counts two through eight; and 120 months (10 years) each on counts nine through thirteen.  (Judgment at 3.)  All counts were to be served concurrently with one another**.**  (Judgment at 3.)

The First Circuit upheld the conviction.  The Court held that the trial court did not abuse its discretion by denying the motion to continue the trial; counsel had sought a continuance due to the voluminous records and hours of recorded phone calls produced by the government. Williams, 630 F.3d at 48.  Williams argued that more time might have improved counsel's ability to impeach some of the government's witnesses, and he argued for the first time on appeal that more time would have enabled him to obtain a record showing he was incarcerated in New York State in 2004, when "'several'" government witnesses testified he was in Maine.  Id. at 47-48.  As the government notes (Response at 20), Williams did not obtain a record of the dates of his incarceration in New York, but Churchill did introduce in evidence as Defendant's Exhibit 1 a document, produced by the government, from the Supreme Court of the State of New York, that indicated that Williams was sentenced in January 2005 to one year of imprisonment. (Addendum to Government's Appellate Brief at G.Add. 9, ECF No. 220-1; Trial Transcript at 8-9, ECF No. 190.)  Counsel referred to this document several times to cast doubt on government

witness testimony that he was in Maine at the relevant times in 2004 and 2005.  (Trial Transcript at 41-43, ECF No. 189; Trial Transcript at 33, 47-48, 51, ECF No. 190.)

The court rejected the argument that four weeks was insufficient time to prepare for trial, noting that the case was "not overly complex," the trial lasted just three days, and Churchill had co-counsel who was present throughout the trial and who cross-examined about half of the government's witnesses.  Id. at 48.  The First Circuit also held that there was no unfair prejudice from the failure to obtain evidence of Williams's absence from Maine because counsel did not seek a continuance of the trial to obtain the record of Williams's 2004 New York incarceration, and the "phantom record" remained missing at the time of the appeal.  Id.  Furthermore, the Court noted that the record was not used to support an alibi, but rather to impeach the testimony of one witness.  Id. at 49 & n.3.  The Court held that Williams waived the other argument he raised in his direct appeal, which was that the evidence was insufficient, because the argument was "skeletal" on that issue.  Id. at 49-50.

The sentence was also upheld on appeal.  Id. at 50-53.  The First Circuit held that (1) the court did not err in its drug-quantity calculations for purposes of determining the base offense level under the 2008 U.S. Sentencing Guidelines Manual, id. at 50-51; (2) Williams waived his challenge to twin two-level increases because he provided no support for his assertion that the increases were not supported by the record, id. at 51; (3) the court did not err in assigning Williams criminal history points for purposes of determining that he was in category V rather than category IV under the sentencing guidelines, id. at 51; (4) his sentence was reasonable, id. at 51-52; and (5) Williams's supplemental pro se argument that he should be resentenced on anticipated changes to the sentencing guidelines was premature.  Id. at 52-53.

The Supreme Court denied Williams's petition for a writ of certiorari on April 18, 2011.

Williams v. United States, 131 S. Ct. 2122 (2011).  Williams filed a timely motion, pursuant to

28 U.S.C. § 2255(f)(1) and Rule 3(d) of the Rules Governing Section 2255 Proceedings.  (ECF

No.  210-5.)

## LEGAL STANDARD

With regard to Williams's sixth amendment ineffective assistance claims, Strickland v.

Washington, 466 U.S. 668 (1984), governs the resolution.   In order to prevail, Williams "must

show that "counsel's representation 'fell below an objective standard of reasonableness,'" Padilla

v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland, 466 U.S. at 688) and that there

exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Id. (quoting Strickland, 466 U.S. at 694).  "Defense

counsel is allowed to make strategic decisions, within the wide bounds of professional

competence, as to which leads to follow up, and on which areas to focus his energies.  This is

especially true during trial, when time is short."  Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir.

2000).  "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need

for a court to consider the remaining prong."  Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir.2010).

In this case the focus is both trial and sentencing.

A movant under section 2255 must show that his sentence "reveal[s] fundamental defects

which, if uncorrected, will result in a complete miscarriage of justice."  David v. United States,

134 F.3d 470, 474 (1st Cir. 1998) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)

(alterations and quotation marks omitted)).  An evidentiary hearing on a section 2255 motion is

"the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an

evidentiary hearing is warranted."  Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir.

2003).  "An evidentiary hearing is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case."  Id. (quotation marks omitted).  The movant must explain why he is entitled to relief; it is not sufficient "to refer to an act or omission of counsel . . . without indicating why it constituted gross impropriety or prejudicial misconduct."  Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971) (per curiam) (denying the petitioner habeas corpus relief from a state court conviction on the grounds that he asserted ineffective assistance of counsel without providing the factual basis for the claim); see also Polanco v. United States, No. 92-2054, slip op. at 2, 989 F.2d 484, 1993 WL 72417, at *1, 1993 U.S. App. Lexis 4871, at *3 (1st Cir. Mar. 15, 1993) (applying the same standard to a section 2255 motion).  With rare exceptions not applicable to this case, section 2255 may not be used to relitigate matters decided on direct appeal.  United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990).

DISCUSSION

1.  **Claim of Ineffective Assistance of Counsel**

   a.  **Howard O'Brien**

Williams begins by asserting that O'Brien's illness, which formed the basis for the January 2009 continuance of the trial, affected "all legal work" O'Brien performed throughout his six-month representation of Williams.  (Motion at 5.)  Williams then makes two specific arguments concerning O'Brien: (1) he did not try to obtain a plea agreement or inform Williams that he could plead guilty even in the absence of a plea agreement with the government, and (2) he failed to move to suppress evidence.  I do not address the blanket assertion about "all legal work" by O'Brien because any such complaints that are unsupported by specific facts are waived.  See Bernier, 441 F.2d at 396.

6

###### i.        Plea negotiations

Williams's argument that O'Brien failed to engage in plea negotiations fails for four reasons.  First, Williams is incorrect in asserting that O'Brien did not attempt a plea agreement.  A joint motion for a continuance filed on August 13, 2008 states: "Government counsel and defense counsel have discussed the possibility of a disposition of this matter without the need for a trial.  Although it appears that a negotiated disposition is possible, the parties require additional time to explore adequately this possibility."  (Joint Motion for Continuance at 1, ECF No. 30.)  After the superseding indictment was filed in October 2008, O'Brien filed an unopposed motion for extension of time in December 2008 in which he stated that "discovery has not been provided in full and plea negotiations have broken down recently."   At that point in time he anticipated filing a motion to sever.  (Unopposed Motion for Extension of Time at 1, ECF No. 65.)  Soon after that, he filed the motion to sever.  (ECF No. 67.)  It is clear from the record that O'Brien did attempt to engage in plea negotiations.

Second, there is no factual basis for his assertion that there was a plea offer in existence of which he was not informed.  In Williams's reply, he asserts for the first time that O'Brien failed to inform him of a plea offer.  (Reply at 3, 7, 9, ECF No. 224.)  Williams bases his assertion on a letter from the prosecutor to O'Brien that states in relevant part: "I have called your office but I have not heard back from you regarding whether your client wishes to proceed to trial, or if he is amenable to a guilty plea.  Please let me know as soon as possible how your client would like to proceed."  (Letter, Reply at 3, 7-9.)[1]  This language cannot reasonably be construed as a formal offer of a specific plea bargain.  Rather, at most it is a request for

---

[1]        Williams has inserted a copy of the letter from the prosecutor at page 8 of the Reply.  It is dated August 12, 2008, and appears to be the reason for the August 13 motion to continue to explore the possibility of further plea discussions.  It adds nothing to the record in terms of an understanding that a plea offer existed to be conveyed to the defendant.

communication about whether Williams wanted to engage in plea negotiations at all.  O'Brien

did engage in plea negotiations, as discussed above.  The Supreme Court has held:  "If a plea

bargain has been offered, a defendant has the right to effective assistance of counsel in

considering whether to accept it."  Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012).  "[A]s a

general rule, defense counsel has the duty to communicate formal offers from the prosecution to

accept a plea on terms and conditions that may be favorable to the accused."  Missouri v. Frye,

132 S. Ct. 1399, 1408 (2012).  When there is no formal offer on the table, this particular duty

does not arise.  See Kingsberry v. United States, 202 F.3d 1030, 1032-33 (8th Cir. 2000) (noting

that to establish prejudice, "the petitioner must begin by proving that a plea agreement was

formally offered  by the government"); Johnson v. United States, 860 F. Supp. 2d 663, 790 (N.D.

Iowa 2012); Gilchrist v. United States, 2012 WL 4520469, at *18-19, 2012 U.S. Dist. Lexis

140278, at *58-61 (D. Md. Sept. 27, 2012).

Third, "[j]udicial scrutiny of counsel's performance must be highly deferential."

Strickland, 466 U.S. at 689.  "[A] court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance."  Id.  Williams has not presented

facts sufficient to overcome the presumption that O'Brien reacted reasonably in asserting that there had

been a breakdown in plea negotiations and in filing a motion to sever.

Fourth, Williams has not asserted any other facts supporting prejudice; he states only that he

"may have opted" to plead guilty.  (Motion at 6.)  This allegation is insufficient to generate a fact issue

concerning whether Williams was prejudiced.  See Hill v. Lockhart, 474 U.S. 52, 59-60 (1985) (holding

that the court did not err in declining to hold an evidentiary hearing because the petitioner failed to allege

that if he had received effective assistance, he "would have pleaded not guilty and insisted on going to

trial").

### ii.      Lack of a motion to suppress evidence

Williams argues that O'Brien provided ineffective assistance of counsel by failing to file a motion to suppress physical evidence, including a firearm identified as a Hi-Point .45 caliber pistol with a serial number of X432643; a recorded phone conversation; and certain federal firearms transactions records.  (Motion at 5.)  He asserts that O'Brien told him, "There is no physical evidence to suppress in your case."  (Motion at 5.)

O'Brien did not file a motion to suppress physical evidence, but he made essentially the same argument that Williams now advocates when he filed Williams's response to the government's first of two motions in limine to admit evidence of firearms recoveries.  (Motion in Limine to Admit Evidence of November 2, 2006, Firearm Recovery, ECF No. 90; Response, ECF No. 104.)  The suggestion that O'Brien did not argue for excluding the firearm at issue from evidence is therefore inaccurate.  Even if I accept Williams's assertion that O'Brien told him that there was "no physical evidence to suppress," there is no prejudice because O'Brien actually addressed the issue in Williams's response to the government's first motion.  See Strickland, 466 U.S. at 694.

The government's first motion in limine argued that evidence of the recovery of one firearm was admissible as direct evidence of the two charges against Williams with respect to that firearm—the charge of aiding and abetting the straw purchaser's false statement that he was the actual purchaser, and the charge of possession of a firearm by a felon.  (Motion in limine at 4, 7-8; Superseding Indictment Counts Seven and Twelve at 8-9.)  Williams opposed the motion in part on the basis of a fact dispute in which Williams asserted that another person had been in possession of that particular firearm just before it was recovered and also due to the undisputed lapse of about nine months from the straw purchase to the recovery.  (Response at 3, ECF No.

104.)  Williams argued that the evidence of recovery was inadmissible pursuant to Fed. R. Evid.

403, 404(b).  (Response at 2-4.)  The Court reserved ruling until trial, noting the dispute of fact.

(ECF No. 105.)  The Court later addressed the merits, during Churchill's representation of

Williams, as discussed below.  There is no basis for a claim that O'Brien failed to argue for the

exclusion of this evidence; the fact that he made that argument in response to the government's

motion to admit the evidence rather than as a motion to suppress is of no consequence in these

circumstances.

Williams argues that O'Brien should have moved to suppress the federal firearms forms

and recorded phone conversations.  (Motion at 5.)  He provides no factual support for this

argument and I consider it waived.  See Bernier, 441 F.2d at 396.

In the context of his discussion about a motion to suppress, Williams also appears to

argue that the government's witness statements should have been produced earlier for his

inspection.  (Motion at 5.)  According to Williams, O'Brien told him that the statements were

"Jenks material" and would not be available until five days before the trial.  O'Brien was

presumably referring to 18 U.S.C. § 3500 and indicating that the government was not at that

point required to produce the witness statements.  I conclude that Williams has failed to allege

any facts that would indicate that O'Brien's response was unreasonable or that Williams suffered

prejudice.

    **b.  Sarah Churchill**

        **i.   Lack of a motion to suppress**

As discussed above, while Churchill represented Williams, the government renewed its

motion in limine to admit evidence of the recovery of the firearms at issue, and this time the

motion concerned several guns.  (ECF Nos. 107, 125.)  The government in the renewed motion

seemed to acknowledge Williams's version of events as to the Hi-Point .45 caliber pistol, and the parties no longer disputed the facts concerning recovery of the weapons.  (Motion in Limine at 3, ECF No. 107; Response at 1, ECF No. 125.)  Williams argued that evidence concerning the recovery of the firearms was not directly relevant and was inadmissible under Fed. R. Evid. 403 and 404(b).  The Court held that the evidence was intrinsic to the charged offenses, citing United States v. Ofray-Campos, 534 F.3d 1, 35 (1st Cir. 2008) and United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006).  (Order at 2-3, ECF No. 129.)  To mitigate the likelihood of unfair prejudice, the Court limited the evidence to the time and place of recovery, disallowed evidence of uncharged criminal activity, and invited the parties to consider entering into a stipulation of facts in order to reduce the danger of unfair prejudice from the evidence.  (Order at 3.)  With the evidence limited in this manner, the Court granted the motion.  (Order at 3.)  There is no basis for a finding of ineffective assistance or prejudice based on counsel's failure to file a motion to suppress in these circumstances; the law is not in Williams's favor on the merits of the evidentiary issue, and counsel's response did not fall below an objective standard of reasonableness.  See Strickland, 466 U.S. at 694.

In his reply, Williams also argues for the first time that counsel also should have moved to suppress the testimony of certain witnesses because they were not credible.  (Reply at 1-2.) The Court need not address these arguments, as they are waived.  See Lebron v. Terrell, 2013 WL 443598, at *6, 2013 U.S. Dist. Lexis 15301, at *19 (D. R.I. Feb. 5, 2013) (citing United States v. Pratt, 129 F.3d 54, 61 (1st. Cir. 1997); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  Williams's argument also fails on the merits because determining witness credibility is a function of the jury.  "It is well-established . . . that determining a witness's credibility, even in the face of a furious attack, is a function that falls squarely within the province of the jury."

Foxworth v. St. Amand, 570 F.3d 414, 427 (1st Cir. 2009).  Counsel was not ineffective for not moving to suppress this testimony.

### ii.  The stipulation

In response to the Court's invitation to enter into a stipulation of facts concerning the recovery of the firearms, Williams and the government on the second day of the trial stipulated that five firearms were recovered by the New York City Police Department.  (Trial Transcript at 185-86, ECF No. 171.)  On the first day of the trial, two of the firearms identified in the stipulation had been admitted in evidence without objection.  (Trial Transcript at 110-11, ECF No. 170.)  These were admitted during the government's direct examination of Wade Collett, who was the Maine-based firearms dealer from whom Williams, through a straw purchaser, bought the weapons.  (Trial Transcript at 77-78, ECF No. 170.)  The two firearms in evidence were a Cobra Enterprise 9 millimeter pistol and a Cobra Enterprise .380 caliber pistol.  (Trial Transcript at 110, ECF No. 170.)  These firearms were identified in Count Eight of the Superseding Indictment.  (Indictment at 8, ECF No. 44.)  The stipulation itself was signed by Churchill and counsel for the government, and was admitted in evidence without objection.  (Trial Transcript at 185-86, ECF No. 171.)  In the stipulation, which was read aloud to the jury, each of the five firearms was identified by model, serial number, and the date and location of its recovery by the police.  (Trial Transcript at 185-86, ECF No. 171.)

Williams asserts that Churchill told him that the stipulation would preclude the entry in evidence of any of the firearms.  (Motion at 10.)  Even if I were to assume that Churchill told Williams that the stipulation would keep the firearms out of evidence, there is no prejudice.  See Strickland, 466 U.S. at 694.  The Court had already issued its order admitting evidence of recovery of the firearms, but excluding evidence that the firearms were used in uncharged

criminal activity.  (Order at 3.)   Because the two admitted firearms were evidence of the crimes with which Williams was charged, they were admissible.  There was nothing to negotiate in the stipulation concerning the entry in evidence of the guns themselves, and nothing further Churchill could have done to prevent their admission in light of the Court's order and the fact that these guns related directly to the charges against Williams.

### iii.  Trial continuances

Williams argues that Churchill should have requested a continuance in open court, as the Court indicated counsel could do if "presented with cognizable prejudice."  Williams, 630 F.3d at 49.  Williams offers no factual support for his argument that counsel was ineffective for not requesting a continuance in open court other than that more time was needed for counsel to investigate, review the evidence, and prepare for trial.  Williams's assertions in this section 2255 motion offer nothing more than he already presented without success in his direct appeal when the focus was on whether the court abused its discretion in not granting more time for trial preparation rather than on whether counsel was ineffective.  Id. at 47-49.  There is no basis for relitigating the issue in the context of this section 2255 motion because Williams presents no facts that would support a claim that the failure to request a continuance during the trial constituted ineffective assistance by counsel.

### iv.  Evidence of Williams's presence in New York

Williams argues that Churchill should have pursued evidence that Williams was in New York, because any evidence that he was not in Maine may have reduced the amount of cocaine that he was found guilty of having sold in Maine.  (Motion at 8.)  The indictment charged Williams with conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base. The statute pursuant to which he was convicted provides for a sentence of

13

between ten years and life imprisonment when the defendant has a prior conviction for a felony drug offense, as William had, and the new conviction is for a quantity of 28 grams or more. (Superseding Indictment at 1.)  See 21 U.S.C. § 841(b)(1)(B)(iii).)  Williams also argues that any reduction of the amount of cocaine he was found to have sold would have had an ameliorative effect at sentencing.  (Motion at 8.)

The evidence of his time spent in New York may actually have worked against him, given that he spent it at least in part on picking up drugs to bring back to Maine.  He asserts that counsel should have pursued New York-based family witnesses and family photographic evidence, as well as evidence of his incarceration there.  (Motion at 7-8.)  Williams believes that counsel provided ineffective assistance for failing to seek the admission of evidence of his fight in New York with his mother's boyfriend when Williams was arrested for breaking the man's car windows.  (Motion at 8.)  Williams attaches to his motion a couple of documents that appear to provide criminal history information from New York.  (ECF Nos. 210-1, 210-3.)  One of these indicates several dates from 2003 to 2006 on which Williams committed crimes and was arrested in New York City, including January 22, 2006, which according to his motion is the date on which he was arrested for breaking the car windows.  (Motion at 8; ECF No. 210-1.)  Other evidence of him in New York consisted of photos and videotape of him at family gatherings such as his daughter's first birthday party and various holidays during the relevant periods.  (Motion at 8.)

Williams also argues that his criminal history record would show that he was incarcerated in New York State in 2004 when, according to the testimony of government witnesses, he was in Maine selling drugs.  (Motion at 8.)  He argues that Churchill's failure to request a continuance to obtain this record constitutes ineffective assistance of counsel.  (Motion at 8.)  The First

14

Circuit noted in the direct appeal that counsel had tried to obtain the record of his New York incarceration but "that attempt failed for reasons that remain unclear." Williams, 630 F.3d at 48-49.

According to the trial transcript, both parties and the Court discussed the matter together in a chambers conference held during jury deliberations, to discuss two notes from the jury. In one of the notes, the jury asked, "is there a reason why neither party sought to obtain the release date from prison?" (Trial Transcript at 91-92, ECF No. 192.) In the course of the chambers conference, Churchill's co-counsel represented to the Court that the prison in New York refused to provide the document to either the government or Williams. (Trial Transcript at 91, 93, ECF No. 192.) The Court's response to the jury was that "[t]hat information is not in evidence and thus I again cannot respond to your question." (Trial Transcript at 94, ECF No. 192.) Williams alleges that an email sent to Churchill indicates that while the jury was still deliberating, evidence of his release date might have become available. (Reply at 16, 18.) He alleges that Churchill should have tried to reopen the evidence. (Reply at 19.) There is no provision in the Federal Rules of Criminal Procedure for reopening the evidence while the jury is deliberating to provide the jury with new evidence. Rather, a defendant would have to seek a new trial pursuant to Fed. R. Crim. P. 33—on the basis of an argument that very likely would have been a nonstarter, given the First Circuit's conclusion that Williams had overstated the importance of this evidence in any event. Williams, 630 F.3d at 49 n.3. The record establishes not only that there was no prejudice at trial or on the direct appeal, as the First Circuit held, id. at 49, but also that Churchill did not fall short in her decisions concerning evidence of Williams's incarceration in New York.

There is no indication that the failure to pursue evidence of Williams's presence in New York deprived him of a "viable defense," which is required to demonstrate prejudice. <u>See United States v. Porter</u>, 924 F.2d 395, 397 (1st Cir. 1991) (quotation marks omitted). On the contrary, it may have been very sound strategy to avoid more evidence of this nature, since it was part of the government's theory of the case that Williams was running guns from Maine to New York and drugs from New York to Maine. I say this knowing that it is not for the Court to determine whether the strategy was excellent, wise, or sound. <u>See United States v. Oliveras</u>, 717 F.2d 1, 4 (1st Cir. 1983) ("Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required."). The Court's focus is on whether counsel's decisions amounted to ineffective assistance of counsel. <u>Id.</u> at 3-4. In that determination, the Court grants wide latitude when it comes to questions about counsel's strategic decisions. <u>See Phoenix</u>, 233 F.3d at 84. Williams has not alleged any facts that place Churchill's decisions within the realm of ineffective assistance of counsel.

For the same reasons, Williams has failed to show prejudice on this point. It is not clear that it would have made any difference to Williams's defense to place him in New York, unless he could introduce doubt about where he was when the government witness alleged he was in Maine. This he did try to do through the exhibit showing he was sentenced in January 2005 in New York. Evidence indicating that he was in New York at other times would not necessarily have strengthened his defense, and may have undermined it.

## 2. Claim of Miscalculation of Criminal History Points

Williams argues that the Court miscalculated his criminal history points. He asserts that he might have pled guilty if he had been correctly placed in category IV rather than incorrectly

placed in category V.  (Motion at 13.)   He argues that he should have received three criminal history points rather than four.  The First Circuit decided these issues finally in the direct appeal. <u>Williams</u>, 630 F.3d at 50-51.  The Court held that Williams waived his challenge to the twin two-level increases.  <u>Id.</u> at 51.  As to the criminal history category, the First Circuit held that the sentencing court did not err in the assignment of points that led to Williams being in category of V.  <u>Id.</u>  These holdings cannot be revisited through a section 2255 motion.  <u>See</u> <u>Michaud</u>, 901 F.2d at 6.

### CONCLUSION

Based upon the foregoing, I recommend that Williams's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be summarily dismissed.  I further recommend that a certificate of appealability not be issued in the event Williams files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 9, 2013

/s/Margaret J. Kravchuk
U.S. Magistrate Judge